JOHN T. HOWARD, APPELLANT, VS. DAVID MOORE ET AL., APPELLEES.

No lien enures under Chapter 3132, Laws, in favor of a laborer for a sub-contractor against a railroad company where the only privity of contract existing is between the company and the first contractor.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion.

*John A. Henderson* and *D. L. McKinnon* for Appellant.

*Benjamin S. Liddon* for Appellees.

The appellees, who were complainants in the court below, brought suit to enforce laborers' liens upon the railroad of the Pensacola and Atlantic Railroad Company. John T. Howard, contractor, and the Pensacola and Atlantic Railroad Company were made parties defendant to this suit. This action was brought under Sections 1, 2 and 3 of Chapter 3132 of Laws of Florida, Acts 1879, McClellan's Digest, page 730, Sections 41 and 42.

As to the first ground of demurrer, the first ground of error in the petition of appeal, I submit the following observations and authorities:

Howard is made a party to this suit for the reason that

he was the contractor for the building of the railroad upon which the appellees claim a lien for labor.

At the time of filing of the bill the road was unfinished or was then being built. Howard was made a party defendant in accordance with the general rule of equity practice, that all persons interested in the object of the suit should be made parties either complainant or defendant. Story's Eq. Plead., §728.

As to general want of equity in bill, the statute upon which this suit was brought is broad and comprehensive.

Statutes must be construed according to their plain import and meaning, and so as to carry into effect the evident intention of the Legislature. At the time (1879) of the passage of the act under which this suit was brought in the Court below, a statute was in force. See McC. Dig., pages 721 and 722, or Chapter 3042, Laws of Florida, page 101, laws of 1877, which gave the mechanic or laborer a lien upon the building, mill, &c., upon which his labor should be performed. This act hampered the lien with several restrictions by requiring that the contract should be made with the owner, and in the case of a journeyman or laborer, limiting the amount for which the owner was responsible to the amount due the contractor. The statute of 1877 did not mention railroads. The object of the Legislature of 1879 was to extend this lien to railroads, to free the lien from all restrictions and to give to those whose labor builds a railroad a guarantee for the payment of the same, and protection from fraud.

Public policy, justice and humanity alike require a liberal construction of such a law. The laborers of the country are generally ignorant people.

If it were not for this beneficent statute, a worthless and insolvent contractor or sub-contractor (if there be such a thing) could employ a large force of laborers, build a road,

collect his money from the railroad company and then re-
fuse to pay the laborers or abscond, leaving them remedi-
less, just as Colson did in this case.

It was to prevent such fraud and injustice that the statute
was enacted, and the court should give the statute a
liberal construction to aid in the accomplishment of its
humane purposes. Schmidt vs. Smith, 61 Ala., 252 ; Gei-
ger vs. Hurry, 63 Ala., 638 ; Welsh vs. Porter, 63 Ala., '
225 ; Barnard vs. McKenzie, 4 .Cal., 251 ; Westland vs.
Goodman, 46 Conn., 83 ; Buck vs. Bryan, 2 How., (Miss.)
388 ; Buchannan vs. Smith, 43 Miss., 90 ; Barnes vs.
Thompson, 2 Swann, (Tenn.) 313 ; Brown vs. Story's Ad-
ministrators, 4 Metcalf, (Ky.,) ; Oster vs. Rabman, 46 Mis-
souri, 595 ; Putnam vs. Ross, 46 Missouri, 337 ; Skyrne vs.
Occidental Mill Co., 8 Helm., (Nevada,) 219 ; Phillips Me-
chanic's Liens, pages 22 and 27, *et seq. ;* Kneeland Mechan-
ic's Liens, page 359, *et seq.*

It may be contended on behalf of appellant that there is
no privity of contract between the appellees (complainants
below) and appellant, Howard, (defendant below) and that
therefore we show no right to recover as against him. I
am aware that there are a number of old decisions, notably
among them some from the Supreme Court of Mississippi ;
Shotwell and Mayrant vs. Kilgore, 4 Cushman, 125 ;
Holmes vs. Shands, 4 Cushman, 639, and same case in 5
Cushman 40, to the effect that a mechanic's or laborer's
lien does not attach to a building, unless the contract was
made with the owner, and that it is limited to the amount
due from the owner to the contractor. A careful reading
of all such cases will show that such decisions were ren-
dered upon statutes similar to our acts of 1868 and 1877,
and not based upon law so broad and liberal to the work-
ingman as that upon which this suit is brought.

The statute upon which this action was brought has

never been passed upon by this court. The case of Trustees of Wylly Academy vs. Sanford, 17 Fla., 162, was based upon the statutes of 1868 and 1877.

When the statute is broad in its terms the courts will enforce the lien of the workingman, whether the contract be made with the owner or not; and whether the owner is indebted to the contractor or not; and a lien has been sustained where the owner had paid the contractor in full. Atwood vs. Williams, 5 Heath, 40 Maine, 409; Philips on Mechanic's Liens, page 84, *et seq.*

The subject of mechanic's liens is a new one. In the different states are statutes varying in their nature both as to the lien itself and the remedy for enforcing it. We can not tell what degree of authority to attribute to a decision until we know the statute upon which the decision is based. I have access to only a brief summary of the statutes of the different States upon this subject, but from them I learn that some States have laws like ours of 1879. The courts will enforce the lien even though it have the effect of charging the property of one person with a debt contracted by another, without his knowledge or consent. They hold in such cases that they will construe the statute strictly and not extend it beyond its manifest provisions, but they do not set the law aside nor nullify its provisions by construction. Mushlett vs. Silverman, 50 N. Y., 360; Hubbell vs. Schrezen, 15 Abbott, N. S., 300; Wager vs. Briscoe, 38 Michigan, 587; Brady vs. Anderson, 24 Illinois, 112; Philips vs. Stone, 25 Illinois, 80.

2. The second ground of appeal is that the bill did not state upon what portion of said railroad the alleged work was performed. The bill alleges that complainants therein rendered labor upon the said railroad in Jackson county, Florida. I do not know how much more definite and certain it could be.

3. As to the third ground of petition of appeal, that James A. Colson is not made a party. The bill states that the bulk of the claims are already in judgment as against Colson, that he has absconded, that he is utterly insolvent, &c., &c.

In view of these statements, I do not see why Colson should be made a party to this suit. Making him a party would aggravate the costs to no purpose.

4. As to the 4th ground, that a court of equity has no jurisdiction, I cite McClellan's Digest, page 730, Sec. 42.

A court of equity would have jurisdiction to enforce this lien on general equitable principles, unless a clear and sufficient statutory remedy was given.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

David Moore and a number of others who are named as plaintiffs filed their bill against Howard and the Pensacola and Atlantic Railroad Company, in which they allege that the said company is engaged in building a railroad through Jackson county, Florida; that they were employed as laborers in the latter part of the year 1882 by one James A. Colson, in the building and construction of the railroad then being built by the Pensacola and Atlantic Railroad Company through said county, and that said Colson was a subcontractor under the defendant, John T. Howard. They set out the amounts due them respectively by said Colson and aver that they have obtained judgments against said Colson. They allege also that he is utterly insolvent; that he had absconded and could not be found in the county; that they had demanded payment of their claims of the said Howard, and had given notice of the nature of their claims to the said company. Plaintiffs pray that it

may be decreed that they have a lien upon the said railroad and a sale of part of the road in Jackson county.

In this bill Howard interposed a demurrer, which being overruled he enters an appeal. Unquestionably no decree affecting this property can be made here without having the company a party to the proceedings, and it does not appear from the record that the company has been served with subpœna or has appeared.

In view of the conclusion we reach, however, we deem it necessary here to examine but one question, as the solution of that finally disposes of the case as it now stands. It is insisted that there is no equity in the bill. In other words, that the complainants have no lien against the road. It is not contended that these persons have any lien unless it is authorized by the provisions of Chapter 3132, Laws. The Legislature there enacted:

" Section 1. That hereafter every person who shall perform labor upon, in or for the benefit of any railroad, mill or manufactory in this State, whether in the construction, working or repairing thereof, to whom there shall be anything due for such services shall have a lien of prior dignity to all others upon such railroad, mill or manufactory, whether operated or owned by an incorporated company or not.

" Section 2. That such lien may be enforced by bill in equity, and all or any number of persons holding such lien may be joined as parties complainant.

" Section 3. That in case suit be brought for such debt at law the Judge having jurisdiction may order execution to be levied upon the property of such railroad, mill or manufactory, and the sheriff or other officer shall proceed to sell the same notwithstanding any claim of exemption interposed."

The claim here is not that of a contractor or laborer for

the company, nor is it a demand for work performed for the contractor, Howard. The services are rendered for a sub-contractor between whom and the company it is not even alleged there is any privity of contract, nor is it alleged that there is any sum due the contractor by the company. The question, therefore, is, has such a person a lien under the statute. In the argument of this case it was insisted upon one side that statutes of this character should be liberally construed, they being in aid of the laborer. While upon the other side it was contended that such statutes created secret liens, were contrary to common right, conferred special privileges and rights upon one class of a community not enjoyed by others, and that they should therefore receive a strict construction. A slight examination of the books will show that such contradictory rules of construction have been announced by the courts in treating the subject generally. Our examination, however, leads us irresistibly to the conclusion that the cases which approach nearer to the precise question here involved do not sanction the view that the road here is subject to the claim of laborers for the sub-contractor. In the case of Wood and Wood vs. Donaldson, 17 Wend., 551, a similar question arose in the Supreme Court of New York. The first section of an act of the Legislature of that State provided " that every mechanic, workman or other person doing any work toward the erection of any building in the City of New York erected under a contract in writing between the owner and builder, or other persons, whether such work be performed as journeyman, laborer, cartman, sub-contractor or otherwise, and whose demand has not been paid, may deliver to the owner an attested account of the amount and value of the work thus performed remaining unpaid, and thereupon such owner shall retain out of his subsequent payment to

the contractor the amount of such work for the benefit of the person performing the same."

It was held that such a statute gave no lien to the creditor of a sub-contractor. 'See also same case, 22 Wend., 395, where Chancellor Walworth discusses the subject generally under the first section of the New York statute.

In the case of Hartman vs. Rand, 27 Penn. State, 515, Lowrie, J., speaking of the relation of a materiel man to the owner of the property under a general lien law, in the head note, says: " No one has power to bind the building for work done or material furnished, except the owner or contractor under him." In the body of the opinion he uses this language: " The claims of workmen and materiel men do not become liens on a house from the mere fact that the work was done or the materials found for its erection, for they must be founded on a contract, express or implied, direct or indirect, with the owner of the estate sought to be charged." Like principles are asserted in Kirby vs. Mc-Garry, 16 Wis., 68, and in Greenough vs. Nickols, 30 Vermont, 768.

Our statute provides for payment for sums due for services. This language implies the existence of a contract. So also the provisions of the third section contemplate contract relations, for what is there provided for is the satisfaction of a judgment at law against the railroad company, mill or manufactory, and certainly it will not be pretended that the laborers under a sub-contractor stand in any such contract relation as enables them to obtain a judgment at law against such company, mill or manufactory.

A person who does labor under contract with the company has a lien under the statute. It may be also that one who labors or does work for a contractor has a lien, as it seems that there is such privity between such laborer and

the company as justifies the existence of a lien. But this question is not here involved.

As to laborers under a sub-contractor, however, there is no privity between them and the company, and a fair examination of all the cases on the subject leads to the conclusion that no such lien exists unless the words of the statute clearly contemplate it. Phillips on Mechanic's Liens, §§45 to 51, inclusive, and cases cited.

The judgment overruling the demurrer is reversed, and the case will be remanded with directions to enter final judgment for· defendants upon the demurrer, unless the plaintiffs desire to make a case by amendment, in which event the usual practice will be followed.